UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
PATRICIA RANTA, NICHOLAS
RANTA, and PRISCILLA RANTA,

                Plaintiffs,

  -against-                          **MEMORANDUM AND ORDER**
                                            Case No. 14-CV-3794 (FB) (LB)

THE CITY OF NEW YORK, NEW
YORK CITY POLICE
DEPARTMENT, and LOUIS
SCARCELLA, and STEPHEN
CHMIL, individually and as Members
of the New York City Police
Department, and JOHN AND JANE
DOE POLICE OFFICERS #1-15,

                Defendants.
------------------------------------------------x

**BLOCK, Senior District Judge:**

      David Ranta spent twenty-three years in prison for a murder he did not commit. *See* Frances Robles, *Man Framed by Detective Will Get $6.4 Million From New York City After Serving 23 Years for Murder*, N.Y. Times, Feb. 20, 2014, at A19.  He settled with the City of New York before filing suit.  *See id.*

      His ex-wife and children, meanwhile, filed this lawsuit against the City and two detectives with the New York City Police Department, Louis Scarcella and Stephen Chmil.  Invoking 42 U.S.C. § 1983, they claimed that the detectives deprived them of their Fourteenth Amendment rights to (1) familial association and (2) access to courts,

and that the City is liable for those deprivations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). All defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

In a prior memorandum and order, Judge Townes granted the motion with respect to the familial association claim, holding that uncertainty in the law governing the claim entitled the detectives to qualified immunity. *See Ranta v. City of New York*, 2015 WL 5821658, at *7 (E.D.N.Y. Sept. 30, 2015). With respect to access to courts, she converted the motion to a motion for summary judgment and gave the parties leave to submit additional factual material. *See id.* at *9. Finally, she dismissed the New York City Police Department as a non-suable entity, *see id.*, and deferred consideration of the *Monell* claim, *see id.* at *10.

The case was reassigned to me following Judge Townes' death. For the following reasons, the motion for summary judgment is granted and the plaintiffs' access-to-courts claim is dismissed. However, the complaint is deemed amended to directly allege the state-law causes of action underlying the access-to-courts claim.

# I

As Judge Townes explained, the plaintiffs claim that Scarcella and Chmil covered up their efforts to frame David, which "[p]revented them from timely asserting state-law claims including, but not limited to, loss of consortium and marital

benefits (Patricia); loss of consortium (Nicholas and Priscilla); and intentional or negligent infliction of emotional and mental pain, suffering, and distress (Patricia, Nicholas, Priscilla)." *Ranta*, 2015 WL 5821658, at *7. Thus, they assert what the Supreme Court has called "backward-looking access claims," *Christopher v. Harbury*, 536 U.S. 403, 414 n.11 (2002), in which "[t]he official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case," *id.* In *Harbury*, the Supreme Court "assume[d], without deciding, the correctness of the [circuit-court] decisions" recognizing backward-looking claims, *id.* at 414, n.9. Ten years later, the Second Circuit stated that "[t]he viability of backing-looking right-of-access claims is far from clear in this Circuit." *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012).

Assuming such a claim exists, the plaintiff must establish both "the underlying cause of action and its lost remedy." 536 U.S. at 415. If the underlying cause of action is still viable, then there can be no access-to-courts claim: "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.*

## II

The defendants' principal argument is that "when one spouse settles a claim

3

against a defendant, and signs a release, the other spouse is precluded from bringing a separate action for loss of consortium." Defs.' Supp. Mem. of Law 3. As an initial matter, that argument would have no bearing on claims for intentional and negligent infliction of emotional distress; nor is it clear that the same rule applies to loss of consortium claims by children. In any event, even with respect to loss of spousal consortium claims, the rule is not that simple. In *Buckley v. National Freight, Inc.*, 90 N.Y.2d 210 (1997), the New York Court of Appeals held that "a loss of consortium claim must be joined with a claim for illness or bodily harm *whenever possible*." *Id.* at 216 (emphasis added). It then approvingly quoted the Restatement position:

> [I]t is possible to join the actions . . . in all situations in which the deprived spouse has had full opportunity to join in the impaired spouse's action and assert a claim and has failed to do so. Thus if the impaired spouse has begun an action for bodily harm, and then settled it and given a release, and the deprived spouse has stood by throughout with full knowledge of the conduct, it has been possible to join in the action at any time before it has become barred by the release, and the deprived spouse cannot now be permitted to maintain a separate action.

*Id.* at 216-17.

In *Buckley*, the injured party had filed suit and then signed a release. Her husband had "stood by throughout with full knowledge," and offered "no special circumstances such as illness or disablement which would have explained his failure to prosecute his claim before his wife's action was settled." *Id.* at 217 (internal

quotation marks and alterations omitted). Thus, the Court of Appeals held that "when plaintiff's wife released her claim, the release barred plaintiff's claim for loss of consortium." *Id.* at 217.

Here, by contrast, there is no evidence that Patricia, Nicholas and Priscilla had a "full opportunity" to join David's action for the simple reason that David settled before filing suit. Moreover, that David and Patricia are divorced suggests an obvious reason why she might not have been aware of or privy to the settlement discussions in the same way a current spouse would presumably be. For these reasons, the Court holds that David's release does not bar the plaintiffs' claims.

## III

The defendants further argue that the plaintiffs "have failed to prove that the City Defendants prevented plaintiffs from timely asserting the aforementioned state law claims" because "they could have commenced a state court action within one year and ninety days of March 21, 2013—the date on which [David's] conviction was vacated." Defs.' Supp. Mem. of Law at 3 (citing N.Y. Gen. Mun. L. § 50-i). In other words, they take the position that the plaintiffs' state-law claims did not accrue until March 21, 2013.

The defendants' argument that the plaintiffs *could have* asserted the claims implies that they cannot do so now. They are correct that a newly filed action in state

court would fall outside the one year and ninety days allowed by the relevant statute of limitations. *See* N.Y. Gen. Mun. L. § 50-i. But the plaintiffs have asked the Court for leave to amend "to include state law claims as both David Ranta and plaintiffs filed timely notices of claim alleging state law claims and loss of consortium, and plaintiffs timely commenced this action without one year and 90 days on June 18, 2014." Pls.' Mem. of Law 17 n.2. If the amendment relates back to the original complaint, then it is "itself timely even though it was filed outside the applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amended pleading relates back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." "Under Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'" *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (quoting *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 87 (2d Cir. 1999)).

The standard for relation back is easily satisfied here. The plaintiffs originally alleged that the actions of Scarcella and Chmil prevented them learning of their state-law claims. But those claims themselves arose from the same actions. And since the

6

underlying claims are elements of the access-to-courts claim, there is no question that the original complaint gave the defendants adequate notice. *Cf. White v. White Rose Food*, 128 F.3d 110, 116 (2d Cir. 1997) ("Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original.").

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant [now supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Because, however, the plaintiffs must rely on relation back to preserve their state-law claims, this is not a usual case.[1] In addition, exercising supplemental jurisdiction will enable the Court to ensure that the defendants are held to their position that the claims accrued when

---

[1] Had the plaintiffs asserted a state-law claim in their original complaint, 28 U.S.C. § 1367(d) would have tolled the statute of limitations "for a period of 30 days after it is dismissed." However, a district court that chooses not to exercise supplemental jurisdiction can only dismiss state-law claims; there is no mechanism for transferring them. It would be strange for a court to grant leave to amend, but then immediately decline to exercise supplemental jurisdiction over the claims added by the amendment. Moreover, it is not clear that a state court would be bound by the Court's determination that the claims relate back to the original complaint.

David's conviction was vacated. *See Hartsdale Fire Dist. v. Eastland Constr., Inc.*, 886 N.Y.S.2d 454, 456 (2d Dep't 2009) ("Under the doctrine of judicial estoppel, or estoppel against inconsistent positions, a party is precluded from inequitably adopting a position directly contrary to or inconsistent with an earlier assumed position in the same proceeding." (citation and internal quotation marks omitted)).

## IV

The motion for summary judgment is granted with respect to the plaintiffs' access-to-courts claim. Accordingly, that claim is dismissed.

In the absence of a viable § 1983 claim against Scarcella and Chmil, the *Monell* claim against the City must be dismissed as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either Monell ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."). However, the complaint is deemed amended to directly allege the state-law causes of action underlying the access-to-courts claim, namely, "loss of consortium and marital benefits (Patricia); loss of consortium (Nicholas and Priscilla); and intentional or negligent infliction of emotional and mental pain, suffering, and distress (Patricia, Nicholas, Priscilla)." *Ranta*, 2015 WL 5821658, at *7. For the

8

reasons stated, the Court will exercise supplemental jurisdiction over those claims.[2]

**SO ORDERED**.

                                                                                     /S/ Frederic Block
                                                                                     FREDERIC BLOCK
                                                                                     Senior United States District Judge

Brooklyn, New York
June 26, 2018

---

[2] Since the plaintiffs are now in possession of sufficient facts to allege their state-law claims, any weaknesses in the claims are presumably due to factors other than the alleged actions of Scarcella and Chmil. Thus, if plaintiffs do not ultimately prevail on their claims, that will not resurrect the access-to-courts claim. An access-to-courts claim, after all, does no more than recognize that the plaintiff has "suffered injury by being shut out of court," *Harbury*, 536 U.S. at 415; it does not guarantee success.