UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
PATRICIA RANTA, NICHOLAS
RANTA, and PRISCILLA RANTA,

                Plaintiffs,

  -against-

THE CITY OF NEW YORK, NEW
YORK CITY POLICE DEPARTMENT,
LOUIS SCARCELLA and STEPHEN
CHMIL, individually and as members of
the New York City Police Department,
and JOHN AND JANE DOE POLICE
OFFICERS #1-15,

                Defendants.
----------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 14-CV-3794 (FB) (LB)

*Appearances:*
*For the Plaintiffs:*
PETER C. DEE
Mavronicolas & Dee LLP
228 East 45th Street, 6th Floor
New York, New York 10017

*For Defendants New York City and Stephen Chmil:*
MARK D. ZUCKERMAN
Assistant Corporation Counsel of the
City of New York
100 Church Street
New York, New York 10007

*For Defendant Louis Scarcella:*
RICHARD E. SIGNORELLI
BRYAN HA
Law Office of Richard E. Signorelli
52 Duane Street, 7th Floor
New York, New York 10007

**BLOCK, Senior District Judge:**

      David Ranta spent twenty-three years in prison for a murder he did not

commit.  *See* Frances Robles, *Man Framed by Detective Will Get $6.4 Million From New York City After Serving 23 Years for Murder*, N.Y. Times, Feb. 20, 2014, at A19.  Wrongful convictions often result in civil litigation, *see, e.g.*, *Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013), but David settled with the City of New York before filing suit.  *See id.*  His ex-wife and children, on the other hand, were not privy to the settlement negotiations and filed this action.  The defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the motion is granted in part and denied in part.

# I

The following facts are taken from the allegations of the amended complaint.  For purposes of this motion, they are accepted as true, with all inferences drawn in the plaintiff's favor.  *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

On February 8, 1990, Rabbi Chaskel Werzberger was shot and killed as his assailant fled a botched robbery attempt.  Six months later, New York Police Department Detectives Louis Scarcella and Stephen Chmil arrested David Ranta.  David was convicted and sentenced to 37.5 years' imprisonment.[1]

Many years later it came to light that David was framed.  One prosecution

---

[1] Because they share a last name, the Court will refer to David and the plaintiffs by their first names.  No disrespect is intended.

2

witness revealed that the detectives had instructed him to identify Ranta in a lineup. Two others admitted they had perjured themselves on the stand in the hopes of cutting favorable deals for their own misdeeds. In addition, the detectives failed to pursue other leads and produced a confession that Ranta denied giving.

After defending the conviction for two decades, the Kings County District Attorney Charles Hynes turned the case over to his Conviction Integrity Unit. A yearlong investigation forced the office to concede the obvious and David was released in 2013. A notice of claim against New York City inevitably followed but, as noted, David's claim was settled quickly and without the need for legal action.

David's ex-wife, Patricia, and their children, Nicholas and Priscilla, also made claims against the City. But their claims were not settled and led to the present lawsuit, which has had a somewhat complex procedural history.

The plaintiffs initially based their claims on 42 U.S.C. § 1983. They argued that, by framing David, Scarcella and Chmil had deprived them of their Fourteenth Amendment rights to (1) familial association and (2) access to courts. In addition, they argued that the New York City Police Department and the City of New York were liable for those deprivations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The case was originally assigned to Judge Townes, who dismissed the familial association claim on the ground that uncertainty in the law governing such a claim

entitled the detectives to qualified immunity.  *See Ranta v. City of New York*, 2015 WL 5821658, at *7 (E.D.N.Y. Sept. 30, 2015).   With respect to the access to courts claim, she gave the parties leave to submit additional factual material in anticipation of a motion for summary judgment.  *See id.* at *9.   Finally, she dismissed the New York City Police Department as a non-suable entity, *see id.*, and deferred consideration of the *Monell* claim, *see id.* at *10.

Following Judge Townes' death, the case was reassigned to me to deal with the access to courts claim.   As Judge Townes had previously explained, the plaintiffs claimed that Scarcella and Chmil had "[p]revented them from timely asserting state-law claims including, but not limited to, loss of consortium and marital benefits (Patricia); loss of consortium (Nicholas and Priscilla); and intentional or negligent infliction of emotional and mental pain, suffering, and distress (Patricia, Nicholas, Priscilla)."   *Ranta*, 2015 WL 5821658, at *7. Addressing the claim on summary judgment, I held that the plaintiffs had not been deprived of access to courts because their state-law claims were still viable, the defendants having conceded that the claims did not accrue until David's conviction was vacated.  *See Ranta v. City of New York*, 2018 WL 3127154, at *2 (E.D.N.Y. June 26, 2018).   Accordingly, I dismissed the access to courts claim, *see id.* at *3, along with the *Monell* claim, *see id.* ("In the absence of a viable § 1983 claim against Scarcella and Chmil, the *Monell* claim against the City must be dismissed

4

as well."). However, I allowed the plaintiffs leave to amend to allege their state-law claims directly and stated that I would exercise supplemental jurisdiction over those claims. *See id.* I then directed the plaintiffs to file and serve an amended complaint so that the defendants could decide whether to pursue a motion to dismiss. *See Ranta v. City of New York*, 2019 WL 2568725, at *2 (E.D.N.Y. June 20, 2019). The plaintiffs filed their amended complaint and the defendants filed this motion to dismiss, thus bringing the matter back before the Court.

## II

The amended complaint asserts claims for (A) intentional infliction of emotional distress ("IIED"), (B) negligent infliction of emotional distress ("NEID"), (C) loss of consortium, and (D) negligent hiring, training and supervision. The Court addresses them in turn.

**A.   IIED**

To make out a claim of IIED, a plaintiff must allege four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). The defendants wisely do not argue that intentionally framing an innocent man for murder is anything but "utterly intolerable in a civilized community." *Id.* at 122 (quoting *Murphy v. Am. Home*

5

*Prods. Corp.*, 58 N.Y.2d 293, 303 (1983)).  They do, however, argue that the claim fails for a number of other reasons.

The Court need address only one of those reasons.  Clearly, the detectives' conduct, as alleged in the amended complaint, was intentional; they did not accidentally frame David.  But in addition to being intentional in that sense, the conduct allegedly causing the emotional distress "must be intentionally directed at the plaintiff."  *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985).  There is perhaps a reasonable inference that the detectives acted with the specific intent to cause David emotional distress, although it would arguably be just as reasonable to infer that the intent behind their actions was to secure a conviction at all costs.  But there is *no* plausible view of the facts alleged that the detectives acted specifically to cause emotional distress to Ranta's family.  In other words, there was no conduct intentionally directed at the plaintiffs.

**B.    NIED**

New York recognizes three variants of negligent infliction of emotional distress.  First, "[a] plaintiff may recover for a purely emotional injury under the 'bystander' theory when: (1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family."  *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (citing

*Bovsun v. Sanperi*, 61 N.Y.2d 219, 230-31 (1984)). Second, "[u]nder the 'direct duty' theory a plaintiff has a cause of action for negligent infliction of emotional distress if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Id.* (citing *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504 (1983)). Plaintiffs concede that these two theories are inapplicable here.

Instead, they rely on the third variant. In *Johnson v. State*, 37 N.Y.2d 378 (1975), the two plaintiffs were the daughter and sister, respectively, of a hospital patient. The hospital negligently—and mistakenly—informed the plaintiffs that the patient had died. *See id.* at 380. Though recognizing that "courts have been reluctant to permit recovery for negligently caused psychological trauma, with ensuing emotional harm alone," the New York Court of Appeals endorsed the view that, in some cases, "an especial likelihood of genuine and serious mental distress, arising from the special circumstances, . . . serves as a guarantee that the claim is not spurious." *Id.* at 382 (internal quotation marks omitted). It concluded that negligently informing someone of the death of a close family member was such a case. *See id.*

A key issue with this third variant of liability is its uncertain scope. The Court of Appeals dealt with a duty to provide accurate information to family members; it also favorably cited cases imposing a duty to use due care in handling

7

a corpse to protect "the personal feelings of the survivors." *Id.* But citing *Prosser on Torts*, it noted that "[t]here may perhaps be other such cases" justifying the cause of action. *See id.* Indeed, in *Baker v. Dorfman*, 239 F.3d 415 (2d Cir. 2000), the Second Circuit "predict[ed] that the New York Court of Appeals would hold that a cause of action lies for negligent infliction of emotional distress in the case of a negligent positive result on an HIV test." *Id.* at 422.

Similarly, the Court predicts that the Court of Appeals would hold that the consequences of a wrongful conviction on spouses and children would present the "especial likelihood of genuine and serious mental distress," *Johnson*, 37 N.Y.2d at 382, necessary to support a claim for NIED.[2] The reasoning in *Johnson* was nothing more or less than an application of what has been the cornerstone of New York tort law for nearly a century:

> While for one to be held liable in negligence he need not foresee novel or extraordinary consequences, it is enough that he be aware of the risk of danger. The consequential funeral expenditures and the serious psychological impact on claimant of a false message informing her of the death of her mother, were all within the "orbit of the danger" and therefore within the "orbit of the duty" for the breach of which a wrongdoer may be held liable.

---

[2]The final authority on the matter is, of course, the New York Court of Appeals. Unfortunately, however, a district court cannot certify a question of state law to the Court of Appeals. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27 (providing that such questions may be certified by "the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state").

8

*Id.* at 382-83 (quoting *Palsgraf v. Long Is. R.R.*, 248 N.Y. 339, 343 (1928)). Railroading an innocent man undoubtedly has a psychological effect on his close family members that is just as predictable and foreseeable as the effect of erroneously sending news of his death.

Defendants object that plaintiffs allege only a "free-floating duty to society." Defs.' Mem. of Law 16 (internal quotation marks and citation omitted). But this is not a claim by a member of the general public to enforce a duty to obey the law; it is a claim that the wrongful conviction had a concrete and particular impact on plaintiffs because of their relationship to him.

Defendants further object because the complaint alleges only intentional conduct. It is certainly true that *David* could not sue for NIED because the detectives' conduct was, with respect to him, intentional rather than negligent. At the same time, however, it evinced an utter disregard for the effect the conduct might have on his family. That is the very definition of negligence and the two are not mutually exclusive; someone throwing a misguided punch can be liable for negligence in hitting a bystander even if he intended to hit someone else.

Similarly, defendants argue that the injury to David's family was not direct, but only consequential. The New York Court of Appeals has said that negligence resulting in only emotional harm can be actionable "when the mental injury is

9

'a direct, rather than a consequential, result of the breach.'" *Ornstein v. N.Y.C. Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 (2008) (quoting *Kennedy*, 58 N.Y.2d at 506)). While David was certainly the direct *victim* of the detectives' alleged misconduct, the psychological harm to his family was still a direct *injury*, in that it flowed immediately, as plaintiffs allege, from the wrongful conviction without any intervening causes.

Defendants next argue that, absent special circumstances, the necessary guarantee of genuineness requires a threat to the plaintiff's physical safety. That argument is circular. The "special circumstances" variant of NIED exists precisely to cover situations not otherwise covered by the "bystander" and "direct duty" variants, which do rely on a threat of physical harm. The limiting factor for the "special circumstances" variant is not whether the defendant's conduct threatens the plaintiff's physical safety, but whether it foreseeably has a genuine, albeit solely emotional, impact. As explained above, the Court concludes that framing David had such an impact on his family.

Finally, defendants argue that NIED does not supplant traditional tort claims, such as loss of consortium. Leaving aside the fact the defendants have (as discussed in the following section) argued that plaintiffs have no such claims, their argument is premature. If the matter proceeds to trial, the Court will ensure that the jury understands that it cannot award the plaintiffs a double recovery—

assuming that the damages for NIED overlap with the damages for loss of consortium. In the meantime, the possibility of liability on one basis is not a ground for dismissing another.

**C.     Loss of Consortium**

   *1.   Patricia*

The complaint alleges that Patricia was married to David at the time of his arrest, but that she was "granted a divorce on the ground of [David's] incarceration" some 15 years later. Defendants point out, however, that Patricia has acknowledged that she and David were already separated at the time of his arrest. They argue that this dooms her claim for loss of consortium in light of caselaw holding that separation cuts off a claim for loss of consortium "in the absence of any testimony regarding the likelihood of a reconciliation." *Dooley v. Skodnek*, 529 N.Y.S.2d 569, 571 (2d Dep't 1988).

Defendants' argument ignores the procedural posture of this case. Patricia has alleged that she and David were married at the time of his arrest, and she is entitled to the inference that, despite the separation, the possibility of reconciliation remained. Indeed, she alleges that their eventual divorce was the result of David's incarceration.

A properly instructed jury will understand that "once a marriage terminates, whether legally or in fact, and there is no reasonable likelihood of reconciliation,

11

the very elements upon which a loss of consortium claim is predicated are no longer present." *Carr v. French-Am. Banking Corp.*, 1991 WL 33291, at *1 (S.D.N.Y. Mar. 6, 1991). A jury might conclude that the Rantas' marriage was, in fact, over at the time of David's arrest, or it might conclude that there was a possibility of reconciliation until the detectives' conduct intervened. The Court cannot answer that question on a motion to dismiss.

### 2. *Nicholas and Priscilla*

With respect to Nicholas and Priscilla, New York does not recognize a cause of action for loss of parental consortium. *See De Angelis v. Lutheran Med. Ctr.*, 58 N.Y.2d 1053, 1055 (1983). The plaintiffs argue that the reasons for the rule are no longer persuasive, but the Court's role is to "give the fullest weight to pronouncements of the state's highest court." *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (quoting *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir. 1999)). It has no warrant to revisit the wisdom of those pronouncements.

**D.    Negligent Hiring**

Finally, plaintiffs allege in a single paragraph that the City is liable for its "intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD with regard to their aforementioned duties, and

12

for negligent retention of same." Am. Compl. ¶ 102. Their opposition to the motion to dismiss does little to blouse out this conclusory allegation, except to say that the detectives' misbehavior was widespread.

"To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment." *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013). "If the employee acted within the scope of her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*." *Id.* at 137.

Surprisingly, plaintiffs take the position that the detectives' "campaign of deception" was beyond the scope of their employment. Pls.' Mem. of Law 9. Defendants argue that plaintiffs have offered no allegations to support that conclusion. That, too, is surprising in that it implies that the detectives were acting *within* the scope of their employment, which would result in vicarious liability for the City.

As with David and Patricia's martial relationship, the Court concludes that it is premature to decide whether the detectives were acting within the scope of their employment based solely on the complaint and the parties' perfunctory arguments. With a more developed factual record and more thorough briefing, the Court can

13

perhaps decide the issue as a matter of law on summary judgment; if not, it can present the competing theories to a properly instructed jury.

### III

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. The claims for IIED are dismissed with prejudice, as are Nicholas and Priscilla's claims for loss of consortium. The claims for NIED, Patricia's claim for loss of consortium, and the claim for negligent hiring and retention shall proceed.

**SO ORDERED.**

       /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 26, 2020