PETER C. DEE, ESQ.
23 Jones Street, Unit 11
New York, NY 10014
(917) 734-7023
deepeterc@gmail.com

January 24, 2022

**Via ECF**
The Honorable Lois Bloom
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY. 11201

      Re: <u>Patricia Ranta, et. al. v. City of New York, et. al.</u>, 14 Civ. 3794 (FB)(LB)

Your Honor:

    I represent plaintiffs Patricia, Nicholas and Priscilla Ranta in the referenced matter. Plaintiffs hereby oppose the Kings County District Attorney's Office (KCDA)'s motion to quash and Defendants' City of New York and Stephen Chmil's (hereafter "City Defendants", the KCDA and City Defendants together hereafter the "Movants") motion for a protective order in respect of Plaintiffs' Subpoena served on the KCDA on January 6, 2022 seeking deposition testimony pursuant to FRCP 30(b)(6) from person(s) to be designated by the KCDA who consent to testify on its behalf as to the matters described in the Subpoena, namely:

> former NYPD detectives Louis Scarcella and Stephen Chmil, including NYPD/KCDA investigation, arrest, prosecution, incarceration and KCDA/CIU review and exoneration of David Ranta for murder of Chaskel Werzberger.

(see Exhibit A Movants' letter motions).

    Plaintiffs' served the subject FRCP 30(b)(6) Subpoena on the KCDA following the issuance of the Court's Order of January 6, 2022, in which Your Honor granted the KCDA's motion to quash Plaintiffs' December 2, 2021 Subpoena to depose Kings County ADA Eric Sonnenschein. Mr. Sonnenschein is (or was) the Deputy Bureau Chief of the KCDA's Post-Conviction Justice Bureau and Conviction Review Unit. Your Honor's Order of January 6 set forth the following findings as regards Plaintiffs' December 2 Subpoena: (1) Kings County ADA Sonnenschein was not involved in the investigation or prosecution of David Ranta's case and his eventual exoneration; (2) Kings County ADA Sonnenschein joined the KCDA's Conviction Review Unit in March 2014, after David Ranta's conviction was vacated in 2013; (3) Plaintiffs

1

deposed the former head of the KCDA's Conviction Review Unit and one of the former Kings County ADAs (Barry Schreiber) who prosecuted David Ranta's case; (4) Kings County ADA Sonnenschein could not testify based on personal knowledge because he had no involvement in the David Ranta case; and (5) Plaintiffs' counsel had a telephone call with a former Kings County ADA who identified ADA Sonnenschein "as the person with the most knowledge regarding the conduct of defective Scarcella as it pertains to the Exonerees" which the Court stated was "not sufficient".

As before, plaintiffs' primary purpose for seeking to depose a representative of the KCDA is to obtain testimony regarding the KCDA's review of not only David Ranta's underlying criminal case, but other convictions reviewed by the KCDA which were tied to Detective Scarcalla. Indeed, former ADA John O'Mara testified that after learning of the conduct of detective Scarcella in the David Ranta case, a KCDA review was ordered of homicide convictions tied to Detective Scarcella generally. As a result, to date, fifteen exonerations have been linked to Detective Scarcella's malicious and wrongful detective work (the "Exonerees"). The facts underlying these exonerations will show a propensity of conduct by defendants Scarcella and Chmil, which if properly supervised, should have resulted in David Ranta's wrongful conviction never happening, or at least being remedied at anytime during the 23 years he spent in prison.[1]

As discussed during the extensive oral argument on January 5, 2022 on the Movants' motion to prevent Mr. Sonnenschein from testifying, the propensity of defendants Detectives Scarcella and Chmil to engage in wrongful conduct leading to wrongful arrests and convictions is an element of plaintiffs' negligent supervision claim. And while the Court did not hold that plaintiffs are not entitled to discovery regarding other wrongful conduct uncovered by the KCDA in their investigation into Detective Scarcella, the Court indicated that plaintiffs could not proceed with the deposition of Mr. Sonnenschein based simply on the statement of a different former ADA to undersigned counsel that he had the most knowledge regarding the KCDA's review of Detective Scarcella's work. The Court may recall that the KCDA complained that Mr. Sonnenschein was too busy as head of the conviction review team to burden the KCDA with his deposition in this case. As indicated that we would during that oral argument on January 5, plaintiffs promptly issued a subpoena under FRCP Rule 30(b)(6) for the same information sought from Mr. Sonnenschein, but allowing the KCDA to provide the representative which would be less burdensome.

The KCDA's investigation of Scarcella and Chmil is relevant here as it will tend to show that the NYPD know or should have known of the detectives' propensity for, essentially, framing innocent people for murder over the course of many years leading up to and after David Ranta's conviction (see Fein v. Cook, 153 A.D.3d 1168, 1169, 61 N.Y.S.3d 10 (2017) (propensity as an element of negligent supervision claims), as well as as possible evidence of the City Defendant's notice of misconduct by these officer defendants that would have required the City Defendant to

---

[1] Plaintiffs' claims only commenced to run upon David Ranta's release from prison, as the law recognizes that the torts implicated here were continuing until his release in 2013. See Breton v. City of New York, 404 F. Supp. 3d 799, 809 (S.D.N.Y. 2019); Stubbolo v. The City of New York, No. 0115474/2006, 2008 WL 1926696, at *3 (N.Y. Sup. Ct. Apr. 23, 2008).

meaningfully act to address the risk of the continuing misconduct it presented. See, e.g., Outlaw v. City of Hartford, 884 F.3d 351, 380 (2d Cir. 2018); Vann v. City of New York, 72 F.2d 1040, 1049-50 (2d Cir. 1995).  The information may also go to the opportunity, motive, intent, or preparation that defendants had to engage in the wrongful conduct which led to plaintiffs' loss, or that it was not a mistake.  See  Fed. R. Evid. 404 (b)(2); see also, Walls at 692-93 (E.D.N.Y. Nov. 24, 2020) (and cases cited therein); Crosby v. City of New York, 269 F.R.D. 267, 275 (S.D.N.Y. 2010) (finding that, in context of a federal civil rights claim, information and document sought pursuant to subpoena regarding similar acts of misconduct in other cases, as well as the Official Corruption Unit's investigation, were relevant to support a showing of a municipal policy or practice of such misconduct in subject case).

Information relating to the other fourteen Exonerees which show Scarcella and Chmil's propensity to inter alia, coerce witnesses, failure to document their conduct, fabricate evidence, and otherwise abuses of their power and authority is both relevant and proportional here.   The KCDA providing such information is not burdensome because the KCDA has already performed most of this work already in their investigations with respect to Scarcella and the Exonerees.

Contrary to the KCDA's first argument, the law of the case doctrine simply has no application here.  The December 2 and January 6 Subpoenas are not duplicative and are materially distinct as they are directed at different types of witnesses and were issued pursuant to different types of authority under the Federal Rules of Civil Procedure.  Even if the law of the case doctrine were to apply (which is denied), the doctrine does not limit this Court's power to reconsider its own decisions prior to final judgment.  See Harris v. Key Bank Nat'l. Ass'n., 193 F. Supp. 2d 707, 711 (W.D.N.Y.), aff'd sub nom. Harris v. Key Bank Nat. Ass'n, 51 F. App'x 346 (2d Cir. 2002).

The City and KCDA's motions should be denied.  The KCDA should be compelled to produce a witness to answer questions regarding the KCDA'a review the Detective Scarcella's work, whether they have access to underlying documents related to Exonerees or not.  The KCDA without a doubt has knowledge about the wrongful conduct of Detective Scarcella and his partner Chmil, without having to review sealed records.  "The point of the deposition, after all, is not to engage in obfuscation or game-playing, but rather to exchange accurate information in a cost-effective and efficient manner."  Winfield v. City of New York, No. 15CV05236LTSKHP, 2018 WL 840085, at *6 (S.D.N.Y. Feb. 12, 2018)

We thank the Court for its courtesy and consideration.

                                         Respectfully submitted,

                                         /s/ Peter Dee, Esq.

cc:     All Counsel (via ECF)