UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
PATRICIA RANTA, NICHOLAS
RANTA, and PRISCILLA RANTA,

                Plaintiffs,

  -against-

THE CITY OF NEW YORK, NEW
YORK CITY POLICE DEPARTMENT,
LOUIS SCARCELLA and STEPHEN
CHMIL, individually and as members of
the New York City Police Department,
and JOHN AND JANE DOE POLICE
OFFICERS #1-15,

                Defendants.
---------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 14-CV-3794 (FB) (LB)

*Appearances:*
*For the Plaintiffs:*
PETER C. DEE
Mavronicolas & Dee LLP
228 East 45th Street, 6th Floor
New York, New York 10017

*For Defendants New York City and Stephen Chmil:*
MARK D. ZUCKERMAN
Assistant Corporation Counsel of the
City of New York
100 Church Street
New York, New York 10007

*For Defendant Louis Scarcella:*
RICHARD E. SIGNORELLI
BRYAN HA
Law Office of Richard E. Signorelli
52 Duane Street, 7th Floor
New York, New York 10007

**BLOCK, Senior District Judge:**

    David Ranta spent twenty-three years in prison for a murder he did not

commit. Although he settled with the City of New York for $6.4 million, his ex-wife, Patricia, and children, Nicholas and Priscilla, were not privy to the settlement.[1] They filed suit in 2014. Most of their claims have been dismissed on various grounds, *see Ranta v. City of N.Y.*, 2015 WL 5821658 (E.D.N.Y. Sept. 30, 2015) (dismissing familial association claim); *Ranta v. City of N.Y.*, 2018 WL 3127154 (E.D.N.Y. June 26, 2018) (dismissing access-to-courts claim); *Ranta v. City of N.Y.*, 481 F. Supp. 3d 115 (E.D.N.Y. 2020) (dismissing intentional infliction of emotional distress and loss of parental consortium claims), but the Court has held that Patricia has stated a claim for loss of consortium and that all three have stated claims for negligent infliction of emotional distress ("NIED") and negligent retention and supervision. *See Ranta*, 481 F. Supp. 3d at 121-22.

The defendants—the City of New York and former NYPD detectives Louis Scarcella and Stephen Chmil—now move for summary judgment on those claims pursuant to Federal Rule of Civil Procedure 56(c). They also move to preclude the testimony of the plaintiffs' forensic economist. For the following reasons, the motion for summary judgment is denied in part and granted in part. The motion to preclude is denied.

---

[1] Because they share a last name, the Court will refer to the plaintiffs by their first names. No disrespect is intended.

2

## I.    MOTION FOR SUMMARY JUDGMENT

### A.    Loss of Consortium

David and Patricia were married but separated at the time of his arrest in 1990; they divorced 15 years later. As the Court explained in its decision on defendants' motion to dismiss, a separation "cuts off a claim for loss of consortium 'in the absence of any testimony regarding the likelihood of a reconciliation.'" *Ranta*, 481 F. Supp. 3d at 120 (quoting *Dooley v. Skodnek*, 529 N.Y.S.2d 569, 571 (2d Dep't 1988)); *see also Carr v. French-Am. Banking Corp.*, 1991 WL 33291, at *1 (S.D.N.Y. Mar. 6, 1991) ("[O]nce a marriage terminates, whether legally or in fact, and there is no reasonable likelihood of reconciliation, the very elements upon which a loss of consortium claim is predicated are no longer present.").

To be sure, there is evidence that the David and Patricia's marriage was on rocky ground in 1990. Although some of that evidence involves typical marital strife over money and family, they had been separated for eight to twelve months, apparently as a result of David's alcoholism and violent outbursts. On the other hand, Patricia testified at her deposition that the separation was a "healthy break" for the marriage because they were "doing something healthy for [their] relationship." Decl. of Peter Dee (Mar. 13, 2023), Ex. B. She further testified that she and David discussed reconciliation during the separation "[a]s long as he was able to maintain his sobriety," but that his wrongful arrest and conviction

3

"didn't give me a chance" to pursue it. *Id.* Even after the conviction, Patricia waited many years to file for divorce because David "was the love of my life" and only did so after giving up hope that he would be released. *Id.* It is clearly for a factfinder to decide, based on all the evidence, whether there was a reasonable possibility of reconciliation and "the continuance of a healthy and happy marital life" that justifies the cause of action for loss of consortium. *Millington v. Southeastern Elevator Co.*, 22 N.Y.2d 498, 505 (1968).

The defendants further argue that, since loss of consortium is derivative in nature, any defenses to the underlying claims will defeat it. In particular, they rely on the rule that a grand jury indictment defeats both a claim for malicious prosecution (because it creates a presumption of probable cause for the prosecution) and a claim for false arrest (because it ends the period of pre-arraignment detention). But they acknowledge—as they must—that the presumption can be overcome with "evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000). "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process." *Manganiello v. City of N.Y.*, 612 F.3d 149, 162 (2d Cir. 2010) (quoting

4

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). That is precisely the claim here, and there is certainly sufficient evidence to support it.

Next, the defendants argue that loss of consortium requires a *physical* injury to the other spouse. That requirement exists, however, to "corroborate[] the claim of lost services," which is too difficult to do in cases involving purely emotional injury. See *Collins v. Willcox*, 158 Misc.2d 54, 58 (N.Y. Sup. Ct. N.Y. Cnty. 1992) (dismissing loss of consortium due to sexual harassment of other spouse). The few reported cases addressing the issue explicitly—and, in the Court's view, correctly—include "physical confinement away from the spouse" as another guarantee of genuine loss of services. See *id.* (quoting *Groat v. Town Bd. of Glenville*, 100 Misc. 2d 326, 330 (N.Y. Sup. Ct. Schenectady Cnty. 1979).

Finally, the defendants argue that the City of New York cannot be held vicariously liable on the loss of consortium claim because the doctrine of *respondeat superior* is limited to torts committed by employees acting within the scope of their employment. See *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979). Patricia, they argue, is judicially estopped from making that showing because she has argued that Scarcella and Chmil were acting *outside* the scope of their employment in connection with the plaintiffs' claim for negligent retention and supervision. See *Ranta*, 481 F. Supp. 3d at 121. But "[f]or the doctrine to apply, there must be a *final* determination endorsing the party's inconsistent

5

position in the prior proceeding." *Ghatani v. AGH Realty, LLC*, 121 N.Y.S.3d 317, 319 (2d Dep't 2020) (emphasis added). Unless and until Patricia prevails at trial based on a particular characterization of Scarcella and Chmil's conduct as inside or outside the scope of their employment, she is merely asserting alternative theories of the City's liability, which the Federal Rules of Civil Procedure expressly permit. *See Bigsby v. Barclays Cap. Real Estate, Inc.*, 298 F. Supp. 3d 708, 725 (S.D.N.Y. 2018) (citing Fed. R. Civ. P. 8(d)).

**B.   NEID**

In its decision on the defendants' motions to dismiss, the Court recognized that no New York case has recognized an NEID claim for the immediate family of a wrongfully convicted person, and that "[t]he final authority on the matter is, of course, the New York Court of Appeals." *Ranta*, 481 F. Supp. 3d at 119 n.2. Nevertheless, the Court's duty was to "predict what the highest state court would decide when faced with an undecided issue of state law." *Liddle & Robinson, LLP v. Garrett*, 720 F. Supp. 2d 417, 424 (S.D.N.Y. 2010). It held that "the Court of Appeals would hold that the consequences of a wrongful conviction on spouses and children would present the 'especial likelihood of genuine and serious mental distress,' necessary to support a claim for NIED." *Ranta*, 481 F. Supp. 3d at 119 (quoting *Johnson v. State*, 37 N.Y.2d 378, 382 (1975)).

For the most part, the defendants repeat their prior objections to recognizing

6

an NIED claim in these circumstances. To these objections, the Court need only summarily respond (1) that the duty imposed by the claim runs only to the spouse and children of a man who the Court must assume for purposes of a summary judgment motion was intentionally framed by Scarcella and Chmil, not to society in general; (2) that intentional conduct as to David could reasonably be found to be careless or reckless as to Patricia, Nicholas, and Priscilla; (3) that their claimed emotional injury was direct, and not merely consequential; (4) that a threat to their physical safety is not a perquisite for this variant of NEID; and (5) that there is no overlap with another tort. *See Ranta*, 481 F. Supp. 3d at 119-120 (addressing the same objections).[2]

The defendants point out that, subsequent to the Court's decision on the motions to dismiss, Judge Amon dismissed similar NIED claims in an unreported decision in *Hamilton v. Scarcella*. On this point, the Court must simply—and respectfully—disagree with its colleague that the harm for the conduct at issue does not possess "the requisite 'guarantee of genuineness.'" *Hamilton*, Case No. 17-CV-6384 (Mem. and Order dated Mar. 24, 2021) (quoting *Ornstein v. N.Y.C. Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 (2008)). The Court of Appeals in *Johnson* held that mistaken news of a family member's death would support a claim for NIED,

---

[2]To the extent the measure of damages is the same as for Patricia's loss of consortium claim, the Court will ensure that the jury does not award a double recovery.

and "railroading an innocent man undoubtedly has a psychological effect on his close family members that is just as predictable and foreseeable as the effect of erroneously sending news of his death." *Ranta*, 481 F. Supp. 3d at 119. The Court stands by that reasoning.

In sum, the Court is aware that it is expanding the "special circumstances" variant of NIED into a new context. It is further aware that New York courts have expressed a "longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury." *Broadnax v. Gonzalez*, 2 N.Y.3d 148, 153 (2004). But reluctance does not always mean a refusal. Although the Court of Appeals said that the same concerns "weigh heavily on us," it nevertheless abrogated the rule requiring an expectant mother to suffer an independent physical injury to recover emotional damages for medical malpractice resulting in a stillbirth or miscarriage. *See id.* at 155 (overruling *Tebbutt v. Virostek*, 65 N.Y.2d 931 (1985)). The Court predicts that it would similarly overcome its reluctance in this case. This is, of course, only a prediction and may be—perhaps should be— confirmed or rejected by the authoritative arbiter of New York law.

C.  **Negligent Retention and Supervision**

At the motion to dismiss stage, the sole issue on the plaintiffs' claim for negligent retention and supervision was whether Scarcella and Chmil were acting

8

within the scope of their employment. The Court concluded "that it is premature to decide whether the detectives were acting within the scope of their employment based solely on the complaint and the parties' perfunctory arguments." *Ranta*, 481 F. Supp. 3d at 121. That remains the case even after discovery and more thorough briefing. *See Romero v. City of N.Y.*, 839 F. Supp. 2d. 588, 629 (E.D.N.Y. 2012) (recognizing that scope of employment is "a fact-intensive inquiry and is ordinarily for the jury").

On summary judgment, the defendants add the argument that the plaintiffs have failed to adduce sufficient evidence to support their claim. The Court agrees.

"Under New York law, an employer can be held liable under theories of negligent hiring, negligent retention, and negligent supervision." *Baez v. JetBlue Airways*, 745 F. Supp. 2d. 214, 225 (E.D.N.Y. 2010) (internal quotation marks omitted). "[A] necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Id.*

The plaintiffs argue that such knowledge is established in this case "by the many widely-reported instances of wrongdoing on other cases prior to David Ranta's arrest on August 13, 1990, and during David Ranta's prosecution which resulted in conviction on May 22, 1991." Pls' Mem. of Law 16. It is true that David's case led to an investigation of Scarcella's other cases, and that many similar instances

9

were uncovered. However, there is simply no evidence that the City knew about that misconduct at the time of David's arrest and prosecution, such that they could have been avoided. *See Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d. 387, 401-02 (E.D.N.Y. 2005) ("To avoid summary judgment on the issue of negligent retention, as the word 'retention' suggests, a plaintiff must offer evidence that the defendant negligently failed to terminate an employee—that is, that the defendant knew or should have known of the employee's propensity to commit acts meriting dismissal, yet failed to act accordingly."). The plaintiffs posit that there was a "void of supervision," Pls'. Mem. of Law 15, and that Scarcella and Chmil kept no records—known as "DD-5s"—documenting their investigation. Again, however, there is no evidence that the detectives' superiors were aware of that omission. Moreover, on the facts of this case, the Court concludes that a reasonable jury could not infer that better recordkeeping would have prevented the egregious behavior alleged. *See Baez*, 745 F. Supp. 2d. at 225 (plaintiff "must demonstrate deficiencies in the training of employees that, if corrected, could have avoided the alleged harm"); *cf. Connick v. Thompson*, 563 U.S. 51, 67 (2011) (holding that, in the absence of a known pattern of violations, district attorney was entitled to rely on "prosecutors' professional training and ethical obligations" to avoid *Brady* violations).

## II.   MOTION TO PRECLUDE

The defendants seek to preclude the opinions of Kristin Kucsma, whom the plaintiffs intend to offer as an expert on damages.  Specifically, Kucsma has opined that, as a result of David's wrongful conviction, the plaintiffs suffered from the loss of his (1) income, (2) household services, (3) childcare services, and (4) tangible nurturing and guidance.

Defendants' objections go principally to the relevance of Kucsma's opinions and the assumptions that underlying them, not to her qualifications or the reliability of her metrics.  Those issues go to the weight of her testimony, not its admissibility.  *See R.M.F.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269 (S.D.N.Y. 2010) ("Unless the information or assumptions that plaintiff's experts relied on were 'so unrealistic and contradictory as to suggest bad faith,' inaccuracies in the underlying assumptions or facts do not generally render an expert's testimony inadmissible." (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009))).

## III.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part.  Plaintiffs' claim for negligent retention and supervision is dismissed; their claims for NEID and Patricia's claim for loss of consortium shall proceed.  Defendants' motion to preclude Kuscsma's testimony

11

is denied without prejudice to their right to renew specific objections in a motion in limine or at trial

    **SO ORDERED.**

                                                                                  _/S/ Frederic Block_____
                                                                                  FREDERIC BLOCK
                                                                                  Senior United States District Judge

Brooklyn, New York
March 28, 2024